**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| STACEY DOOLIN, as Personal Representative of the Estate of RICHARD E. DOOLIN, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>PNEUMO ABEX LLC, et al,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: 3:16-CV 00778 MMH-PDB |

**PNEUMO ABEX LLC'S MOTION IN LIMINE**
**TO PRECLUDE OR LIMIT TESTIMONY BY STEVEN COMPTON AND**
**SUPPORTING MEMORANDUM OF LAW**

Defendant, Pneumo Abex LLC ("Abex"), moves this Court for an Order in limine precluding or limiting the testimony of Plaintiff's expert, Steven Compton ("Dr. Compton"). In support, Abex states:

## INTRODUCTION

Based on his deposition testimony, Rule 26 expert witness disclosure and Report, as well as testimony in other cases, Abex anticipates that Dr. Compton intends to opine on the behavior of airborne asbestos dust fibers, the ability of various types of asbestos-containing products to emit respirable asbestos particles, and the hazards to Decedent, Richard Doolin ("Decedent") posed by the asbestos. (DE 69 at 3-4; DE 69-2). Significantly, however, Dr. Compton's opinions are not based on any case-specific information related to Decedent's alleged exposure or to any specific products, let alone to Abex products.

Consistent with rulings from other courts and well-established federal law, Dr. Compton's testing and his opinions based on that testing are inadmissible because:

1. Dr. Compton is not qualified to offer these opinions;

2. Dr. Compton's methodology and opinions are unreliable, irrelevant and not supported by an adequate methodology pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993);

3. Dr. Compton's testimony and opinions do not "fit" the facts of this case.

4. Dr. Compton's opinions are nothing more than speculation; and

5. Dr. Compton's testimony would be unfairly prejudicial, confuse the issues and mislead the jury pursuant to Rule 403.

**BACKGROUND**

Dr. Compton was deposed on October 13, 2007.[1] (*See* Exh. A- Dep. Steven P. Compton, Ph.D., 10/13/2017). Dr. Compton intends to testify about fiber release; asbestos content in brakes; the levels of asbestos released during certain activities, including the behavior of airborne asbestos dust fibers; the ability of various types of asbestos-containing products to emit respirable asbestos particles; and the hazards to Decedent posed by various concentrations of asbestos dust in the air. (DE 69-2). He further intends to opine that Decedent was exposed to "significant levels" of asbestos fibers while working with and around others working with asbestos-containing friction parts. (DE 69-2 at §4; *see also* Exh. A at 35-6; 73-80).

Dr. Compton's opinions purport to be based, in large part, on studies conducted by others over the years for other cases, involving different allegations, different exposure levels and different circumstances. Moreover, the tests were not performed in a simulated work environment. Rather they were performed in test chambers. He did not conduct any brake studies

[1]In his deposition, for the first time, Dr. Compton offered opinions related to Decedent's potential exposure to asbestos fibers on clothing brought home from work ("take-home exposures"). (Exh. A at 60-61; 69-70). Dr. Compton conceded that such opinions were not disclosed in his report and that he had not evaluated that exposure. (Exh. A at 69-70). Accordingly, such opinions should also be excluded pursuant to Rule 26.

specifically for this case. (Exh. A at 23). Nor does he have any information as to Dr. Doolin's actual exposure to Abex products. (*See e.g.* Exh. A at 59, 81-2).

**ARGUMENT**

"The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Daubert*, 509 U.S. at 592 n. 10. Federal Rule of Evidence 702 allows a Court to permit opinion testimony by a qualified expert only if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

Courts have distilled the requirements of Rule 702 into two crucial inquiries: (1) whether the proposed expert's testimony is relevant; and (2) whether it is reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see Daubert*, 509 U.S. at 589.

"Relevance," also described as "fit," considers "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id.* For example, a scientific study must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591-92. *McDowell v. Brown*, 392 F.3d 1283, 1298–99 (11th Cir. 2004)). Expert testimony does not "fit" when there is "too great an analytical gap" between the facts and the proffered opinion. *Id.* (citing *General Electric Co.*, 522 U.S. at 147)).[2]

---

[2]Notably, even if a witness satisfies the Rule 702's threshold requirements for admissibility by being qualified and capable of rendering reliable opinions, Fed. R. Evid. 703 mandates that those

As to whether proffered expert testimony is reliable under Rule 702, courts are instructed to consider factors such as: (1) whether the testimony is "scientific knowledge" that derives from the scientific method; (2) whether it has been subjected to peer review and publication; (3) whether the scientific technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. *Id*. at 592-93. However, because the foregoing factors are by no means exhaustive of all the considerations that bear on the reliability of a given expert's opinion(s), a district court has discretion to consider additional factors in discharging its Rule 702 gatekeeper responsibilities." *Id.* at *3 (citing *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). What is clear, however, is that the district court's "focus must be on the expert's principles and methodology, not the conclusions they generate." *Id.* at *3 (citing *Daubert*, 509 U.S. at 595). *See also Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005) (noting trial court's duty to act as a gatekeeper to prevent "speculative and unreliable opinions" from infiltrating the courtroom).

In applying these principles, courts have consistently held that experts must provide more than mere speculation and assumptions as the basis for their opinions. *Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994). *See also Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (a district court's gate-keeping function requires it to reject opinions that are predicated on "subjective beliefs or speculation"). Moreover, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit

opinions must be founded on data which are "reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject."

opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014)) ("opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" is not admissible"). Plainly stated, the gate-keeping function requires more than simply taking the expert's word for it. The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." Fed R. Evid. 702 Advisory Committee's Note (2000).

Finally, expert testimony has a high potential for prejudice, and even otherwise admissible expert testimony may be excluded under Rule 403. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 579 (N.D. Fla. 2009). *See also Daubert,* 509 U.S. at 595 ("[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses"). Such exclusion is warranted when the probative value of the proffered and "otherwise admissible expert testimony is substantially outweighed by its potential to confuse or mislead the jury, or if the testimony is cumulative or needlessly time consuming." *Hendrix*, 255 F.R.D. at 579. *See also Hull v. Merck & Co., Inc.*, 758 F.2d 1474, 1477 (11th Cir. 1985) (the admission of speculative and "potentially confusing testimony is at odds with the purposes of **expert testimony** as envisioned in Fed. R. Evid. 702"); *United States v. Stevens*, 935 F.2d 1380, 1399 (3d Cir. 1991) (**expert testimony** properly excluded because probative value was outweighed by concerns of "undue delay, waste of time, or needless presentation of cumulative evidence").

## I. DR. COMPTON IS NOT QUALIFIED TO OFFER OPINIONS IN THIS CASE

As a preliminary matter, Plaintiff must first establish that Dr. Compton is ***qualified*** to offer opinions. Expert testimony is admissible only if the witness has expertise in the specific

and discrete area with respect to which he or she intends to testify. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009), *aff'd* , 609 F.3d 1183, 1193 (11th Cir. 2010)).

"To meet the qualification requirement, a party must show that its expert has sufficient 'knowledge, skill, experience, training, or education' to form a reliable opinion about an issue that is before the court." *Hendrix*, 609 F.3d at 1193. *See also* Fed. R. Evid. 702. Stated otherwise, it is not enough that a proposed expert be qualified generally. Rather, they must possess the specific expertise necessary to opine on the subject of the proposed **opinion**. *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277-MARTINEZ-GOODMAN, 2016 WL 7507848 (S.D. Fla. Aug. 1, 2016). Moreover, "even if the witness has special knowledge or general experience, the court must confirm that the witness' competence matches the subject matter of each opinion to be given. *Id.* at *3. *See also Wright v. Case Corp.*, No. Civ. A 1:03 CV 1618-JEC, 2006 WL 278384 at *3 (N.D. Ga. Feb. 1, 2006) (mechanical engineer was not **qualified** to testify that the product at **issue** was defective or to offer alternative designs because he "has very little experience with the type of machinery at **issue**" and had not "made a serious effort to gain expertise since [being] retained [ ] as an **expert**")).

Dr. Compton obtained a Ph.D. in physics in 2009. (Exh. A at 6). He admits that he lacks education in risk-assessment. (*Id*. at 7). He is not an epidemiologist and has never participated in an epidemiologic study (*Id*. at 13-14). He has no training in toxicology. (*Id*. at 15). He has no educational experience in auto mechanics. (*Id.* at 28-29). **Most importantly, Dr. Compton, is not a certified industrial hygienist**. (Exh. A at 14). He has never conducted an industrial hygiene survey concerning asbestos exposure in any automobile facility, nor has he performed any air sampling for asbestos exposure while automobile repair work was being performed at an

automobile facility. Dr. Compton's tests are not designed to measure the potential exposure of individuals doing brake repair.

Notwithstanding that he does not have expertise in such areas as the calculation of time-weighted exposures for a particular plaintiff, he seeks to opine about the release of asbestos into the air and more particularly, that Dr. Doolin was exposed to significant levels of asbestos fibers. It is clear that Dr. Compton does not have the requisite expertise to opine in the areas about which he seeks to testify.

## II. DR. COMPTON'S TESTIMONY DOES NOT SATISFY THE *DAUBERT* STANDARD

### A. Dr. Compton's Tests And Opinions Are Not Based On A Sufficient And Reliable Foundational Predicate And Methodology

Plaintiff cannot satisfy the reliability prong, in the instant case, because, even assuming he otherwise was qualified, Dr. Compton has not compiled data, performed tests, taken photos, made calculations, or performed inspections of any of the alleged locations or areas in which Decedent purportedly was exposed to asbestos. (*See e.g.* Exh. A at 59). Nor has he done any studies or bulk sample analysis of brakes to which Dr. Doolin was exposed. (*Id*. at 36). In fact, Dr. Compton's studies are not designed to test real-life situations or mechanics' use of brakes and other friction products.

Further, he admits that he has not done testing to compare his studies to the actual garage where Dr. Doolin worked. (Exh. A at 59, 62). As such, he does not have sufficient and reliable basis to offer opinions about the exposures experienced by Decedent. He does not know the level of asbestos in the ambient air at the garage, even though his analysis depends upon a comparison between the asbestos released during brake work to the levels in the ambient air. (Exh. A at 75-80).

**B. <u>Dr. Compton's Opinions are Predicated on Studies Which Were Not Conducted Under Conditions Substantially Similar To This Case and Are Not Reproducible and As Such, the Tests and Opinions Based on Those Tests are Inadmissible</u>**

Testing is a prime indicia of reliability. Importantly, when an expert's opinion is based on a test, the expert's testimony must be excluded if the expert fails to establish substantial similarity between the circumstances sought to be replicated and the test itself. *See, e.g., Hendrix,* 255 F.R.D. at 588 (as a general rule, testing performed by a proffered expert must replicate with substantial similarity the conditions present at the time of the incident/accident at issue for the test methodology to be deemed reliable). *See also Ore v. Tricam Industries, Inc.*, No. 14-60269-CIV-SCOLA/OTAZO-REYES, 2015 WL 11197754 (S.D. Fla. Jul. 20, 2015) (circumstances of "screwdriver **test**" and "sledgehammer test" performed by defendant's expert were not **substantially similar** to those present at the time of plaintiff's accident and, therefore, expert testimony relating to those tests were unreliable and inadmissible under both Fed. R. Evid. 702 and *Daubert*); *Cartwright v. Home Depot U.S.A., Inc.*, 936 F. Supp. 900, 904 (M.D. Fla. 1996) (expert testimony would be excluded where neither of plaintiffs' experts made any effort to ascertain or even approximate what level of exposure to irritants was created by plaintiffs' described use of latex paint that allegedly caused their asthmatic condition, nor did the expert quantify, in scientific terms, what level of exposure would have been sufficient to cause plaintiffs' asthma).

Other than what he has read in deposition testimony, Dr. Compton has no knowledge about Decedent's exposures including, for example, the space in which he performed brake work, or the frequency, regularity or proximity of alleged exposure to asbestos in Abex products. (Exh. A at 62, 81-2). In fact, the tests upon which Dr. Compton bases his opinions were conducted well before he became involved in the instant case and do not replicate or even

purport to replicate the workplaces or sites where the Decedent was allegedly exposed to asbestos. Moreover, the tests results upon which Dr. Compton purports to rely are based on "peak" exposures, rather than time-weighted averages. (*Id*. at 14-15). Further, the tests do not replicate the dimensions of work sites where Decedent was allegedly exposed, the ventilation at the facilities or garages, and/or the release and dispersion of brake dust generated from brake work. Indeed, Dr. Compton did not perform his tests in an automotive repair facility or garage. Finally, Dr. Compton cannot testify conclusively about the brakes that Decedent used and/or claims to have been exposed to and, as such, he did not conduct a test specific to Dr. Doolin's alleged exposures. (*Id*. at 23). Further, he will not be able to identify a study that would directly relate to Decedent's specific exposure. Instead, Dr. Compton will attempt to testify generically about exposure levels while an individual is performing various tasks. (*Id*. at 27).

For these reasons, his testimony should be excluded.

## III. DR. COMPTON'S OPINIONS DO NOT "FIT" THE FACTS OF THIS CASE

As set forth above, in addition to relevance, expert testimony must "fit" the facts of the case—*i.e*. "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Thus, a scientific study must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591-92. *McDowell v. Brown*, 392 F.3d 1283, 1298–99 (11th Cir. 2004)).

As set forth above, Dr. Compton has no specific evidence related to this particular individual's exposure including the particular products to which he was exposed and/ or the environment. (*See e.g.* Exh. A at 81-2). With respect to Abex specifically, Dr. Compton relies on two studies, MVA 7746 and MVA 8322. (See Exh. B – MVA 7746 and Exh. C – MVA 8322 respectively). Notably, MVA 7746 was a study of "Heavy Duty Brakes", a type of brakes used

on large trucks. (Exh. B at 2). This study is irrelevant considering the evidence in this case does not support Plaintiff's exposure to Abex brakes on heavy trucks. Further, MVA 8322, a study of "Rayloc, Stopper" brakes, is also irrelevant to this matter. (Exh. C at 2). There is no record evidence that Plaintiff was exposed to "Rayloc Stopper" brakes. Accordingly, his testing and his opinions do not "fit" the facts of this case.

## IV. DR. COMPTON'S OPINIONS ARE NOT BASED ON FACTS IN EVIDENCE AND, THEREFORE, AMOUNT TO NOTHING MORE THAN IMPERMISSIBLE SPECULATION

As set forth above, speculative expert testimony unsupported by reliable predicate facts is incompetent and inadmissible as unreliable under *Daubert* and its progeny. *McClain*, 401 F.3d at 1238. Because Dr. Compton has no knowledge and has not conducted any testing related to the same brake material may have been exposed, any opinion that Dr. Doolin was exposed to "significant" levels of fibers in his breathing zone which Dr. Compton defines as any exposure greater reported ambient levels. (Exh. A at 35-36). Moreover, Dr. Compton admitted his characterization of "significant" is not directly correlated to whether the exposure is medically significant or causative of disease. (*Id*. at 74).

Accordingly, Dr. Compton's opinions are purely speculative and should be excluded for this reason.

## V. DR. COMPTON'S TESTING AND HIS OPINIONS BASED ON THAT TESTING WILL UNDULY PREJUDICE ABEX, CONFUSE THE ISSUES, AND MISLEAD THE JURY

The Court may exclude evidence including expert testimony if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice, confuse the issues, and mislead the jury. Fed. R. Evid. 403.

First, because Dr. Compton has done virtually no investigation into the facts of this case, any comments by him as to the Decedent's alleged exposure to Abex's products is speculative and can only serve to confuse and mislead the jury.

Moreover, there is no way for Dr. Compton to relate his staged experiments to the nature or extent of any actual exposure the Decedent may have experienced. On the other hand, there is significant risk Abex will be unfairly prejudiced due to the jurors being alarmed by the very nature of the experiments performed by Dr. Compton and others in a controlled setting and under controlled conditions that bear no resemblance to the facts of this case. There is little doubt that Abex will be unfairly prejudiced if the jurors misinterpret Dr. Compton's experiments as representative of the Decedent's alleged exposure(s), which they indisputably are not. Thus, whatever scintilla of relevance Plaintiff may argue Dr. Compton's testing and opinions have based on that testing possess, that value is greatly outweighed by the irreparable prejudice it will cause Abex. Further, Dr. Compton's testing and opinions will confuse the issues and mislead the jury. Accordingly, Dr. Compton's testimony should be excluded.

## CONCLUSION

The unreliability of Dr. Compton's qualifications and opinions in this matter, and the potential for unfair prejudice with respect to the issue of the Decedent's alleged exposure, provide a sufficient basis for exclusion. Accordingly, Abex requests that this Court enter an Order in limine striking or, in the alternative limiting the testimony Steven D. Compton, Ph.D.

## CERTIFICATE OF GOOD FAITH COMPLIANCE

Pursuant to Local Rule 3.01(g), on November 13, 2017, undersigned counsel conferred with opposing counsel, David Jagolinzer, who opposes the relief sought in this motion.

**REQUEST FOR HEARING**

Pursuant to Local Rule 3.01(j), Defendant, PNEUMO ABEX LLC, respectfully requests a 30-minute hearing on this motion.

Respectfully submitted,

COLE SCOTT & KISSANE, P.A.
Dadeland Centre II, 14th Floor
9150 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 350-5300
Facsimile: (305) 373-2294

By: */s/ Henry Salas*
HENRY SALAS
Florida Bar No. 815268

*Counsel for Defendant Ford Motor Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the _13th_ day of November, 2017, the foregoing was filed using the Court's CM/ECF system which will send electronic notice of the same to all interested parties.

By: */s/ Henry Salas*
HENRY SALAS
Florida Bar No. 815268