**IN THE UNITED STATES DISTRICT COURT**
**FOT THE MIDDLE DISTRICT OF FLORIDA**

**JACKSONVILLE DIVISION**

STACEY DOOLIN, as Personal Representative of the Estate of RICHARD E. DOOLIN,

CASE NO.: 3:16-CV-00778-MMH-PDB

Plaintiff,

v.

AMERICAN OPTICAL CORPORATION, et al.,

Defendants.
_________________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION IN LIMINE TO PRECLUDE OR LIMIT TESTIMONY BY DR. STEVEN COMPTON**

COMES NOW, Plaintiff, STACEY DOOLIN, as Personal Representative of the Estate of RICHARD E. DOOLIN, by and through the undersigned counsel, and files this Response to Defendant FORD MOTOR COMPANY'S Motion *In Limine* to Preclude or Limit Testimony by Dr. Steven Compton. In support of denying said Motion, Plaintiff states as follows:

## I. INTRODUCTION

Defendant's present Motion seeks to preclude or limit testimony of Plaintiff's expert, Dr. Steven Compton, under its false assumption that a scientist like Dr. Compton can only opine as to testing performed on the *actual* products that Decedent worked with decades ago. Of course, Defendant's erroneous standard attempts to create an impossible barrier to expert testimony, since it would be extremely unlikely that a fungible product, such as a brake or clutch, would still be in the possession of a plaintiff after thirty or forty years. Instead, Dr. Compton is *not* required, by case law or the Rules of Evidence, to have compiled data, performed tests, taken photos, made calculations, taken samples

or performed inspections on the *actual* friction products at the *actual* locations where Mr. Doolin was exposed to asbestos.

## II. <u>LEGAL STANDARD</u>

When reviewing a challenge to the admissibility of expert testimony under Federal Rule of Evidence 702, courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matter he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). The United States Supreme Court has specified several factors relevant to the reliability of expert testimony, including whether an expert's theory has been tested, whether it has been subject to peer review and publication, the error rate of the technique, and whether the expert's approach is generally accepted in the scientific community. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 593-94 (1993). The test is a flexible one, and not every factor will necessarily apply to all expert witness testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Courts have "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999) (internal quotations omitted).

The standard for admissibility is not stringent. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568 (2009). Although an expert must be at least minimally qualified in his field, his qualification to offer opinion at trial may be based on any combination of “knowledge, skill, experience, training, or education”; he need not be a leading authority in the field. Fed.R.Evid. 702. (Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony.) *Id.* *S*o long as the

expert is at least minimally qualified, gaps in his qualifications generally will not preclude admission of his testimony, as this relates more to witness credibility and thus the weight of the expert's testimony, than to its admissibility. *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D.Ga.2006), *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F.Supp.2d 1293, 1304 (N.D.Ga.2008).

However, courts must be careful to not "supplant the adversary system or the role of the jury: **'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence**.'" *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 596) (emphasis added).

## III. ARGUMENT

### A. DR. COMPTON IS QUALIFIED TO RENDER HIS OPINIONS IN THIS CASE.

Dr. Steven Compton is a physicist and microscopist with experience in testing asbestos-containing products for fiber release. *See*, Report Dr. Compton, attached as Exhibit A, Curriculum Vitae at *Appendix A*. He is currently an Executive Director at MVA Scientific Consultants. Prior to working with MVA, Dr. Compton served as Teaching Assistant from 2003 to 2009 in the Department of Physics and Astronomy at the University of Georgia, which is where he received his Ph.D. in Condensed Matter Physics, which involves the study of solid or physical materials through a number of different microscopic techniques. Additionally, Dr. Compton served as a Research Assistant from 2001 to 2009, also with the Department of Physics and Astronomy at the University of Georgia. Dr. Compton is a member of ASTM International, an international standards organization that develops and publishes voluntary consensus technical standards for a wide range of materials, products, systems and services. He is also a member of the American Physical Society, Association for Aerosol Research, Environmental Information Association, Microscopy Society of America and the Georgia

Microscopical Society. Over the course of his career at MVA, Dr. Compton has authored or co-authored hundreds of reports involving tests on a wide variety of asbestos-containing products, in order to determine the amount of asbestos contained in each product, and/or the product's ability to release asbestos fibers into the air. At its essence, this is the type of testimony Dr. Compton is intended to provide in this case.

Furthermore, since Dr. Compton's laboratory, MVA Scientific Consultants, is an accredited laboratory, it is required to undergo audits by an independent organization that reviews records, observes sample-handling procedures, checks test methods and interviews MVA scientists to ensure proper laboratory practices are in place. Furthermore, the laboratory procedures followed by Dr. Compton and MVA are methods that are published primarily by the Environmental Protection Agency, National Institute of Occupational Safety and Health, the ASTM, or they are methods published in the peer-reviewed literature.

Contrary to Defendant's Motion, Dr. Compton is more than qualified to testify, based upon his education, training, professional experience and review of the relevant scientific literature, regarding the range of asbestos content found in brakes and clutches, as well as their ability to release asbestos fibers into the air. *See*, Report of Dr. Compton, attached as Exhibit A. To this extent, *Appendix D* of Dr. Compton's Report references the multitude of automotive friction tests that Dr. Compton relies upon in providing his opinions in this case. Defendant would have this Honorable Court ignore the wealth of testing performed by MVA and Dr. Compton on brakes and clutches, since it was performed in a controlled laboratory (where bystanders and the environment are protected from dangerous asbestos fibers), as opposed to being performed in an "automobile facility." However, the same processes of brake and clutch replacement performed during Dr. Compton's tests (sanding, grinding, use of air hoses, and cleaning) are the same processes that would be performed by a mechanic in an

"automobile facility" and are the same processes described by Richard Doolin, the Decedent's father, during his two days of deposition testimony. The foregoing would serve only as a topic that would presumably be explored by Defendant in cross-examination; however, it is certainly not a basis to proclaim that Dr. Compton lacks the requisite expertise.

### B. DR. COMPTON'S TESTIMONY IS SUFFICIENT UNDER *DAUBERT*.

Contrary to Defendant's Motion, Dr. Compton is not required by case law or the Rules of Evidence to have compiled data, performed tests, taken photos, made calculations, taken samples or performed inspections of the *actual* products at the *actual* locations where Mr. Doolin was exposed to asbestos decades ago. Defendant's impossible standard strays far from the holdings in *Daubert* and its progeny. Furthermore, and as expressed in his Report (Exhibit A at p. 1), MVA Scientific Consultants and Dr. Compton have performed microscopic examinations or fiber release testing or both on asbestos-containing brakes and clutches manufactured or sold by Bendix, Rayloc, Abex, NAPA, Borg Warner, and many others. Furthermore, the results contained in *Appendix D* involve substantially similar processes of brake and clutch replacement activities as those encountered by Mr. Doolin, including sanding, use of compressed air, and cleaning-up. To this extent, Dr. Compton's opinions "fit" the facts of this case, and his relied-upon tests are substantially similar to the brake and clutch exposures experienced by Mr. Doolin.

Finally, Defendant argues that Dr. Compton's Report does not address asbestos fiber release onto clothing and, therefore, Dr. Compton should be precluded from testifying about such exposures. Dr. Compton testified as follows on this matter:

> Q Do you have any opinions today regarding the
> levels of exposure that Richard Doolin would have had
> from Edward Doolin's clothing?
> MR. KUNEN: Objection to form.
> A That's a good question. When asbestos
> fibers are released from activity that involve working

> with friction materials, those airborne asbestos fibers can ultimately settle out on a number of different surfaces. Either workshop floors or machinery.
>
> They can also settle out on portable surfaces like an individual's clothing or their hair or skin. The portable surfaces can allow for subsequent exposures to occur at other locations. For example, an individual who might be performing laundering duties on asbestos-contaminated clothing. MVA has done some investigations on fiber
>
> Page 61
>
> release from asbestos-contaminated clothing contaminated from working with asbestos-containing friction materials and other asbestos-containing materials.
>
> The actual concentrations would vary depending on the amount of dust that's present on the clothing and the activity that's taking place that causes a re-suspension or re-entrainment. It could be something like shaking out the clothes before putting them into a washing machine, for example, but I don't know that I would be able to provide a specific range of exposures from any activity that would require manipulation of asbestos-contaminated clothing, but it would be my opinion that there are numerous documented studies, aside from the MVA studies, that also show that there is evidence of fiber release from manipulating asbestos-contaminated clothing.

*See,* Deposition of Dr. Compton, attached as Exhibit B, 60:9 - 61:18. Defendant does not dispute that Dr. Compton's Report in this case discusses asbestos fiber release from working with automotive friction products. Instead, Defendant's Motion rests on the assertion that Dr. Compton's Report does not use Defendant's buzzword, "take-home exposures," and instead discusses "resuspension" exposures. To this extent, Dr. Compton's Report states, "[s]weeping up the settled dust resulting from these activities can resuspend dust containing asbestos into the air, exposing the individual to asbestos fibers." As indicated in Dr. Compton's curriculum vitae, he has also studied and presented on "Resuspension of Settled Asbestos Dust – A Review of Exposure Assessments Related to Cleaning

Asbestos Dust and Laundering Asbestos Contaminated Clothing." The fact that Dr. Compton's Report refers to the scientific term "resuspension" exposures, rather than using Defendant's buzzword, "take-home exposures," should not limit Dr. Compton from providing his opinion relating to resuspension of asbestos fibers from clothing (or other surfaces), which is discussed in his Report and in the above-cited deposition testimony.

## III. CONCLUSION

As shown above, Defendant's Motion is based upon misstatements of the law and mischaracterizations of generally accepted scientific opinions. Dr. Compton's opinions and methodologies are generally accepted in the scientific community and based upon his education, training, professional experience and review of the relevant scientific literature. The appropriate means for Defendant to attack any purported deficiencies in Dr. Compton's relied-upon tests is cross-examination.

WHEREFORE, Plaintiff, STACEY DOOLIN, as Personal Representative of the Estate of RICHARD E. DOOLIN, respectfully request that this Honorable Court deny Defendant's Motion *In Limine* to Preclude or Limit Testimony by Dr. Steven Compton.

Respectfully submitted,

THE FERRARO LAW FIRM, P.A.
*Attorneys for Plaintiff*
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Telephone (305) 375-0111
Facsimile (305) 379-6222

*/s/ Marc P. Kunen*
MARC P. KUNEN, ESQ.
Florida Bar No.: 91781
mpk@ferrarolaw.com

## REQUEST FOR ORAL ARGUMENT

Pursuant to the Local Rules of the United States District Court Middle District of Florida, 3.01(j), Plaintiff hereby requests oral argument on this matter. Plaintiff anticipates that the estimated time required to argue all eight dispositive motions (not including motions for summary judgment) would be approximately one hour.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically on counsel of record via CM/ECF this 4th day of December, 2017.

THE FERRARO LAW FIRM, P.A.
*Attorneys for Plaintiff*
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Telephone (305) 375-0111
Facsimile (305) 379-6222

*/s/ Marc P. Kunen*
MARC P. KUNEN, ESQ.
Florida Bar No.: 91781
mpk@ferrarolaw.com